IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RHONDA FLEMING, | § | |
| | § | |
| Plaintiff , | § | |
| | § | |
| | § | |
| V. | § | Civil Action No: 4:12-CV-00452 |
| | § | |
| DR. LESLIE POWERS, THE GEO | § | |
| GROUP, INC., UNITED STATES | § | |
| MARSHAL SERVICE, UNITED | § | [REMOVED FROM |
| STATES OF AMERICA, WARDEN | § | THE 96TH DISTRICT COURT |
| CHRISTOPHER STRICKLAND, | § | TARRANT COUNTY, TEXAS |
| MAJOR DURHAM, CYNDEE OATES, | § | CAUSE No: 096-25916-12] |
| DUSMS, DR. CABELLERO, MYRA | | |
| WOMACK, PHARMACY TECH | § | |
| BROWN, KEEFE COMMISSARY | § | |
| NETWORK SALES, COMMISSARY | § | |
| MANAGER VILLAREAL, | § | |
| ARAMARK CORPORATION, | § | |
| CYNTHIA MOSLEY, JENNIFER | § | |
| CALDWELL, MONTGOMERY | § | |
| COUNTY SHERIFF'S OFFICE, | § | |
| R. CHRISTOPHER GOLDSMITH, | § | |
| and $1,846,668.98, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |

## INDEX OF STATE COURT FILE

| Tab | Document | Filing Date |
|---|---|---|
| 1. | Original Petition | June 4, 2012 |
| 2. | Paupers Affidavit of Inability to Pay Costs | June 4, 2012 |

3.          Costbill (short) for $166.60                          June 4, 2012

4.          Pro Se Filing                                          June 4, 2012

5.          Letter from the Court                                  June 6, 2012

6.          Motion for Discovery to Perform Service of Process   June 11, 2012

7.          Civil Docket


                                    Respectfully submitted,

                                    SARAH R. SALDAÑA
                                    UNITED STATES ATTORNEY

                                    /s/ T.J. Johnson_____
                                    T.J. Johnson
                                    Assistant United States Attorney
                                    Texas State Bar No. 10794175
                                    1100 Commerce Street, Third Floor
                                    Dallas, Texas 75242-1699
                                    Telephone: 214.659.8715
                                    Facsimile: 214.659.8807
                                    Email: Tj.johnson@usdoj.gov

OF COUNSEL:

Paul Irby
Senior CLC Attorney
United States Department of Justice
Federal Bureau of Prisons
Fort Worth, TX 76127

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served via certified mail, return receipt requested on this 3rd day of July 2012 on:

Justice Court - 96th District
Tim Curry Justice Center - 7th Floor
401 W. Belknap
Fort Worth, TX 76196-0225
817-884-1450

Rhonda Fleming
FMC Carswell
P.O. Box 27137
Fort Worth, TX 76127

[1]Tim Flocos
2402 Rio Grande
Austin, TX 78704
For the GEO Group, Inc and all of its employees/contractors

/s/ T.J. Johnson
T.J. Johnson
Assistant United States Attorney

---

[1]Defendant United States of America serves attorney Tim Flocos based upon Plaintiff's representation in her original complaint that she has served Mr. Flocos, as representative of The Geo Group, Inc., in this matter.

1

**096 259612 12**

STATE OF TEXAS

TARRANT COUNTY DISTRICT COURT

A CERTIFIED COPY

ATTEST: *O.25.12*

**THOMAS A. WILDER**
**DISTRICT CLERK**
**TARRANT COUNTY, TEXAS**

BY: *Laura Tanner*

**DEPUTY**
**LAURA TANNER**

RHONDA FLEMING,
 Plaintiff,

v.                                                    CIVIL COMPLAINT NO.

Dr. Leslie Powers, in her official &
 individual capacity,
THE GEO GROUP, INC.,
UNITED STATES MARSHAL SERVICE,
UNITED STATES OF AMERICA,
WARDEN CHRISTOPHER STRICKLAND, in his official and individual capacity,
MAJOR DURHAM, in his official and individual capacity,
CYNDEE OATES, DUSMS, in her official and individual capacity,
DR. CABELLERO, in her official and individual capacity,
MYRA WOMACK, in her official and individual capacity,
PHARMACY TECH BROWN, in her official and individual capacity,
KEEFE COMMISSARY NETWORK SALES,
COMMISSARY MANAGER VILLAREAL, in official capacity only,
ARAMARK CORPORATION,
CYNTHIA MOSLEY, in official and individual capacity,
JENNIFER CALDWELL, in official and individual capacity,
MONTGOMERY COUNTY SHERIFF'S OFFICE, in official capacity,
R. CHRISTOPHER GOLDSMITH, in official and individual capacity,
$1,846,668.98,
            Defendants.

THOMAS A. WILDER
DISTRICT CLERK
2012 JUN -4 PH 1:16
FILED
TARRANT COUNTY

**CIVIL RIGHTS COMPLAINT UNDER *BIVENS*, FEDERAL TORTS CLAIMS ACT, SECTION 1983 AND**
**ALL OTHER APPLICABLE STATE AND FEDERAL LAWS**

TO THE HONORABLE JUDGE OF SAID COURT:

        COMES NOW, Rhonda Fleming, Plaintiff, pro se files this civil rights complaint under Bivens v. Six

Unknown Federal Narcotic Agents, 91 S.Ct 1999 (1971), Federal Torts Claims Act, 28 U.S.C.A, Section

1346 (b) (1), American Disabilities Act, 42 U.S.C., Section 1983, medical malpractice, Section 2680(h)

intentional tort and all other applicable state and federal laws, as well as any recognized legal theories,

in which the Plaintiff may obtain relief.  In support, the Plaintiff presents the following:

## JURISDICTION

This Court has jurisdiction to consider the claims in this Complaint. The Supreme Court in **Minneci v. Pollard**, U.S. No. 10-1104, January 10, 2012, decided that State law tort claims are an adequate remedy when denial of medical treatment against a private company contracting with the federal government.

## VIOLATIONS OF THE PLAINTIFF'S CONSTITUTIONAL RIGHTS
## FEDERAL LAW VIOLATIONS
## STATE LAW VIOLATIONS

### A. Denial of Religious Freedom

The plaintiff has been in the custody of the USMS since December 18, 2007, as a pre-trial, mentally disabled, detainee. USMS enters into contracts with local jails and private prisons to maintain custody of the Plaintiff and other federal prisoners. Presently, the Plaintiff is in the custody of the MCSO and GEO Group, Inc., a subcontractor, with the Montgomery County Sheriff's Office ( MCSO). The USMS entered into a contract with MCSO, with no provisions to provide the Plaintiff with reasonable

opportunity as a Christian to exercise her religious freedoms as guaranteed by the First and Fourteenth Amendment.

The Plaintiff was arrested in Dallas, on December 18, 2007, and the USMS had the Plaintiff in a jail, during Christmas, with no religious services or opportunity to exercise her faith. The United States of America, along with the USMS, routinely enter into contracts with jails and detention facilities, which violate the rights of detainees, specifically, the right to worship.

The USMS and USA have violated the Plaintiff's rights as a Christian by entering into contracts with facilities, which do not provide religious services to prisoners or detainees. This is a recognized constitutional right and the USMS has displayed deliberate indifference to the needs and rights of the Plaintiff's religious freedoms. The USMS and the United States of America (USA) violated the Plaintiff's constitutional rights.

MCSO, GEO and Warden Strickland, a private corporation, in contract with a federal agency, have knowingly violated the Plaintiff's rights to religious freedom. The Plaintiff and other detainees' have been held almost a year at the facility without one church service. The Plaintiff has not received communion in almost a year. The Defendants have an ongoing policy of not providing any religious services, violating the Plaintiff's First Amendment rights. The Plaintiff has a religious obligation to attend services on Sunday and receive communion, the Body and Blood of Jesus Christ.

The plaintiff has been denied her right to reasonable opportunity to her exercise of religion, by USA, MCSO, GEO, Warden Strickland and USMS, as well as Cyndee Oates and the representatives of the USMS with MCSO and MCSO AND GEO who enforce and enter into these contracts. All Defendants knew of, disregarded the right to religious services, and did nothing to make sure it was available before housing detainees. Defendants USMS, Oates, MCSO AND GEO, Strickland, and Durham were aware religious services would be unavailable to detainees when they opened the facility. The building was built with no chapel or education area to have services.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief. The USA and USMS as a government agency should be ordered not to enter into contracts with private prisons or jails, which do not offer detainees reasonable opportunities to exercise her religious freedom.

MCSO and GEO should be ordered to hire a fulltime chaplain. GEO is a private, for- profit corporation and this is one of the costs of doing business. A chaplain is necessary for ensuring the rights of religious freedom for 1,000 detainees.

MCSO and GEO should be ordered to provide an area for religious services where inclement weather conditions will not deny the Plaintiff and other detainees' religious services.

B. Unjust enrichment fraud against Plaintiff and other detainees by Keefe Co., MCSO and GEO.

The state and federal laws, state correctional facilities must use the profits from prisoner commissary purchase to benefit the prisoners. The profits cannot be used to pay the bill of MCSO and GEO. The Defendants are using the profits to benefit the county and a private corporation.

In January 2008, the Plaintiff was held in the custody of MCSO and was subjected to price gouging in the commissary prices and the use of the phone. Four phone calls from Conroe, Texas to Katy, Texas cost my mother, $75.00. The Plaintiff's family sent her $300 for commissary because the food given was a very small amount and very poor quality. The Plaintiff lost 10 pounds in less than 3 weeks.

Defendants MCSO, GEO, Warden Strickland, Oates and USMS are aware that Keefe's prices are 60% or higher than any state or federal prison commissary. The prison food given is unhealthy, poor quality and served in very small portions, which forces detainees to purchase food from Keefe. The Plaintiff spent $2500 in 7 months to feed herself, an amount, which would have lasted 3 years in a state or federal facility.

A ramen noodle soup sold for 30 cents in state or federal facilities was sold for 86 cents to the Plaintiff. A small bag of chips is sold for 96 cents when a family size bag of the same brand is sold for $1 elsewhere.

Then the Defendants decided to get very greedy. First, they sold boxes of little Debbie type snacks in a box for $2.50—which was about $1.20 higher than sold elsewhere. Then, the Defendants started selling the snacks individually at 40 cents per cake/snack, taking the price of one box of oatmeal cakes to $4.80. Defendants Keefe, MCSO and GEO, and Strickland are involved in an unjust enrichment fraud upon detainees and their families, who send money for their care. The Plaintiff paid taxes on these purchases and is considered a consumer protected under the Deceptive Trade Practices Act of the state and federal government.

Defendants USMS and Oates received numerous letters about the commissary prices because the food is so poor at the facility; detainees were starving unless they were able to purchase food. These Defendants placed the Plaintiff in the care of MCSO and GEO, therefore are liable for the Plaintiff's losses and physical harm.

The Plaintiff meets the amount-in controversy requirement to bring this claim against Keefe. The Plaintiff spent at least $1,000 more than she should have for items purchased. (See, Judiciary Act

1789, 1 Stat. 73, 78.)  The Plaintiff and other detainees, past and present are united to enforce a single title or right in which they have a common and undivided interests—that Keefe, MCSO and GEO refund 60% of the monies charged and the profits should be held in an account for the sole benefit of present and future detainees of JCDF.

When Defendants Keefe, Strickland, Oates, MCSO and GEO were asked about how the profits were being spent on detainees, the Plaintiff received a grievance response stating the facility purchased some handballs for the recreation area.

The commissary grosses about **$100,000 per month or more.**  MCSO and GEO did not let the Keefe Co. come in free.  MCSO and GEO are receiving 25-30% of the profits.

Under the Freedom of Information Act, the Plaintiff and other detainees have requested records to account for the profits, which should be spent, on detainees for books, newspapers or exercise equipment, and Strickland refused to provide it.

Using the profits for the benefits of it—MCSO and GEO, has civil and criminal penalties attached to it under state and federal laws.

The Plaintiff request declaratory, injunctive, punitive and compensatory damages.  Specifically, the Plaintiff requests the Court order MCSO, GEO and Keefe to provide the Plaintiff with records showing the gross and net profits of sales to detainees at the facility, from August 2008 to August 2009. MCSO and GEO should be ordered to explain how $300,000 or more has been spent to benefit the Plaintiff and other detainees.  The Plaintiff requests the imposition of a constructive trust on MCSO, GEO and Keefe.

The Plaintiff requests that a constructive trust be placed over fifty percent of gross income Defendant Keefe has made from the period of August 2008 through the present, as well as any incoming sales made to detainees at Joe Corley Detention Facility (JCDF).

The imposition of a constructive trust is generally governed by state law. **Southmark Corp. v. Grosz (In re Southmark Corp.), 49 F.3d 1111, 1118 (5th Cir.1995).**  Under Texas law, a constructive trust is an equitable remedy that the courts may impose when "the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." **Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401, 405 (1960).**  Imposition of a constructive trust is appropriate when the claimant establishes that (1) the debtor has committed actual fraud or has committed constructive fraud through the breach of a preexisting fiduciary or confidential relationship, (2) the debtor would be unjustly enriched by retaining the proceeds of the wrong, and (3) there is a traceable res upon which to impress the trust. **See, Haber Oil Co. v. Swinehart (In re Haber Oil Co.), 12**

F.3d 426, 437 (5th Cir.1994) (applying Texas law); see also, Meadows v. Bierschwale, 516 S.W.2d 125, 128-29 (Tex.1974);  In re Monnig's Dep't Stores, Inc., 929 F.2d 197, 201 (5th Cir.1991) (citing >Talley v. Howsley, 142 Tex. 81, 176 S.W.2d 158, 160 (1943)).

Defendant Keefe, with the assistance of Defendants MCSO, GEO, Strickland and Oates, are committing actual and constructive fraud upon the Plaintiff, through in unjust enrichment scheme of price gouging, in the sale of commissary food and other items. The Defendants are being unjustly enriched by the retaining the proceeds of wrongdoing and tracing these funds to impress the funds are possible by the appointment of a receiver by the Court.

This fraudulent activity of price gouging of the Plaintiff, her family, JCDF detainees and their families is ongoing. The Plaintiff's Complaint supports the request for the constructive trust.


## C. Inadequate Mental Health Care

The Plaintiff was transferred to JCDF on October 24, 2008, from Federal Medical Center-Carswell (Carswell), where she had just received treatment for a major depressive episode. The Plaintiff has been diagnosed with Bipolar I Disorder, Post Traumatic Stress Disorder, and Severe Anxiety. Carswell, a federal hospital and mental health facility for prisoners, transferred the Plaintiff with a 30-day supply of her medications, Tegretol and Effexor XR. A complete summary of the Plaintiff's mental health status and necessity of the medications were attached.

On October 25, 2008, without seeing a physician, the Plaintiff was denied her medications from Carswell. The Plaintiff went through severe withdrawals and was violently ill. She experienced cramping of her muscles, nausea, constant ringing in her brain, blurred vision, as well as a serious change in perception and mood. The Plaintiff also suffered neuropsychiatric injuries.

November 3, 2008, U.S. District Judge Miller, issued a court order that the Plaintiff be given the same medications she received at Carswell.  This Order was given to JCDF( which is owned by MCSO), GEO, USMS, Oates, Strickland and Womack, the Health Services Administrator for GEO. The Plaintiff was prescribed 200mg of Tegretol, twice a day, in 12-hour intervals and Effexor XR, 150mg, once a day, in the morning.

The medication was never administered as prescribed. Some days, the medication was given at 3:00am in the morning and the second dosage at 10:00pm or later. At other times, Defendant Brown gave the wrong medication or no medication at all. This occurred from November 2008 to January 2009, when the Plaintiff contacted Judge Miller, who ordered a Show Cause hearing on the matter.

In the hearing, Defendants GEO, USMS, Strickland, Oates and Womack admitted to one occasion of not providing the Plaintiff medication. The Plaintiff stated to the Court, medications were being signed out as if they were delivered, but in fact were not delivered. Defendant Womack testified this was not true and it is a violation of state law to sign out medicine before it is actually administered.

This is true and that is exactly what was happening in January 2009 to the present. All Defendants were made aware of this non-delivery of medication, but no changes were made. The Plaintiff, other detainees and even staff members of the facility started to report failure of some of the pharmacy techs to deliver the medication.

Several times, Brown gave Officer Ferguson medication to deliver to the Plaintiff—in clear violation of the state licensing laws. Other pharmacy techs gave medication to the transportation officers to administer to the Plaintiff. On all occasions, Officers Williams, Johnson and Roland refused to administer these medications and the Plaintiff had to go to court without her medication, during her trial.

During the Plaintiff's trial, she would not get back to her cell until 8:30pm and medication usually was not given until 10:00pm or sometimes later. The next day, or morning, if the medication was administered, it was given at 3:00am in the morning. This was less than six hours after the previous dosage, when properly administering the medication would be in twelve-hour intervals. This went on from March 23, 2009 to April 27, 2009.

The Defendants, USMS, GEO, Womack, Strickland and Oates all had knowledge the Plaintiff had a serious mental illness and had just had a major depressive episode, with suicidal ideation, yet from November 2008 to May 2009, the Plaintiff never was examined by a psychiatrist or psychologist. This denial of adequate treatment in combination with the improper administering of the Plaintiff's medication lead her to continue to suffer with suicidal thoughts, hives, mania and major depression. Physically, the Plaintiff was lethargic at times, while other days she had racing thoughts and overall sense of being ill.

Because the Plaintiff was on Tegretol, the level of the medication was suppose to be checked every two weeks to protect the Plaintiff from liver damage and to ensure the proper Tegretol levels were being maintained for the medication to actually help the Plaintiff. No blood test were ever offered or done from November 2008 to the present. After the Plaintiffs started filing grievances, a test was offered.

On July 2, 2009, for the first time, the plaintiff was seen by Defendant Caballero, MD. Caballero was on a screen, not in person. The first question asked by Caballero was, "How many times have you

tried to kill yourself?" Caballero was rude and completely uncaring. Caballero discontinued all medications.

The Plaintiff spoke with Durham and the grievance coordinator, about the cancellation of her medications. Caballero told the Plaintiff that no one should be on Effexor XR for a year. The medication is the type that must be tapered off, or the patient will suffer severe withdrawals, as the Plaintiff experienced in October 2008, when the Defendants initially discontinued the medication. All Defendants were contacted about the discontinuing of the medication on July 2, 2009. The Defendant was ignored, again, and suffered through weeks and weeks of unending physical pain and emotional trauma.

Forty days later, August 13, 2009, Caballero decided to prescribe Effexor XR to the Plaintiff again, without any examination or reason for re-prescribing the medication. Pharmacy Tech Furr just showed up and said the Effexor XR was now available to the Plaintiff.

The Plaintiff went through at least four weeks of pure hell, withdrawals from psychotropic medications, which the Defendants took and gave at will, so at this point, she refused all medical care, for her own physical safety. The Plaintiff acknowledges she needs mental health care, but the Defendants have unnecessarily caused too much physical and mental pain, to be trusted to administer any more medications. Any time they decided to take the medications, they do, without justification and with no concern for the welfare of the Plaintiff or other detainees.

All involved Defendants, subjected the Plaintiff to cruel and unusual punishment, displayed deliberate indifference to the Plaintiff's recognized mental illness, were negligent and acted with an attitude nothing could be done because their actions are approved by the federal government. The Defendants violated the Plaintiff's Eighth and Fourteenth Amendment rights, repeatedly, while under a federal court order, no less.

GEO, specifically, has a policy of ignoring the medical and mental health needs of detainees by depriving them of their medications upon arrival at JCDF. Again, all Defendants named in this section were aware the Plaintiff had a serious mental illness. A note detailing the medications the Plaintiff is supposed to take was placed on her cell door, November 2008 and remains there today. The Defendants had been put on notice with medical records from Carswell, a federal judge court order, and later a show cause hearing, which included a warning from Judge Miller. Judge Miller made it clear he was giving the Defendants the benefit of the doubt, but he did not want to hear about failures to follow the order again.

Dr. Camille Kempke, MD , a psychiatrist with the Bureau of Prisons, at FMC Carwell, testified in a criminal proffer hearing in April 2009, that the Plaintiff should not have been on Effexor past 4 to 6 weeks.  Effexor is widely known to cause manic episodes and severe depression in patients with bipolar disorder.  The Plaintiff experienced manic episodes and contemplated suicide through 2009.

Because the Defendants, GEO, USMS and others failed to ensure the Plaintiff received adequate mental health care, she was on a psychotropic medication for at least 7 months more than was medically necessary and it caused harmful side effects, physically and emotionally.

The Plaintiff was improperly placed on Effexor because Dr. Leslie Powers, Ph.d, a forensic psychologist advised the court the Plaintiff would not be able to represent herself without being medicated.  However, Dr. Powers was not licensed by the State of Texas to prescribe medications and by communicating to the court the dosages and psychotropic medications she believed the Plaintiff required, Dr. Powers caused the Plaintiff physical and emotional harm.  Dr. Powers was not licensed by this State or any other state to advise anyone about medications.  Dr. Powers gave district court Judge Miller specific dosages and medications, which lead him to believe he was dealing with a medical doctor.

Dr. Kempke, testified in a proffer hearing that she was never consulted by the court about medicating the Plaintiff.

The actions of all Defendants violated the constitutional rights of the Plaintiff and were non-discretionary acts. "The United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims, the occurrence of such a violation would involve the performance of a non-discretionary function for jurisdictional purposes, if the constitutional tort is also cognizable as an intentional tort under state law. As a federal district court explained:

*[A] court must determine whether there is a specific and intelligible constitutional mandate that involves or is related to the alleged intentional torts of the accused officer(s). If such a mandate exists, the Court will conclude, for jurisdictional purposes only, that the alleged torts occurred during the performance of a non-discretionary function. Upon reaching such a conclusion, the Court may determine the merits of the > section 2680(h) intentional tort claims under the applicable state tort law.*

2009 WL 416983, Castro v. U.S., (C.A.5 (Tex.) 2009)

Under the **American Disabilities Act**, the Defendants failed to reasonably accommodate the Plaintiff's disability, disregarding her mental illness. If the Plaintiff had diabetes, chronic care treatment would have been given. The Plaintiff's mental illness requires the same chronic care as a heart patient or diabetic. Bipolar disorder is a chronic mental illness, with no cure. It is a physical and mental illness, because it stems from a neurological disorder of the brain. The Plaintiff was discriminated against by the Defendants from November 2008 to the present due to their failure to provide chronic mental health care to the Plaintiff.

MCSO has liability under this issue also, for not properly monitoring the conduct of their subcontractor. GEO is being sued all over the state of Texas and this should have alerted MCSO of potential problems.

GEO, Strickland, USMS and Oates have violated the Plaintiff's rights to information in her medical files. These Defendants denied informal requests and grievances requesting a copy of the Plaintiff's medical file. Under the Freedom of Information Act, the Plaintiff has a right to this information.

The Plaintiff requests injunctive, declaratory, compensatory, punitive, nominal and any other relief, which may apply.

D. Due Process Violation/Denial of Meaningful Access to Courts/Retaliation Claim

The following are the events that have lead the Plaintiff to seek relief from the Court. The events occurred from November 5, 2008 through July 23, 2009.

1. The Plaintiff has been held in F-Cellblock, which has 5 individual cells, a hallway of about 30 feet long and a dayroom area with a television and microwave oven.

2. The Plaintiff was placed in this particular housing by a specific request from Cyndee Oates, DUSM, with USMS. The Plaintiff invoked her right to self-representation in her criminal case. Because the case involved numerous financial records and medical documents, the decision was made to place the Plaintiff in a single cell versus a dormitory on B-Cellblock. The records and documents contain the names, addresses, dates of birth, social security numbers and other personal information of parties involved in the cause. B-Cellblock has no lockers to secure the 5 boxes of documents sent to the Plaintiff by standby counsel. F-Cellblock cells have locks on each door, therefore the documents and any personal legal materials were secure.

3. The Plaintiff was classified as a general population detainee, with the same rights and privileges as detainees on B-Cellblock. The Plaintiff had access to recreation and law library with general population female detainees. The Plaintiff had dayroom and shower access from 6:00am—11:00pm. Leisure library and when religious services were organized, the Plaintiff had access to attend with general population. In short, although the Plaintiff was housed in another cellblock, her rights and privileges were no different from any other detainee. The Plaintiff's door was never locked unless she left the cellblock.

4. From November 5, 2008 through July 23, 2009, the Plaintiff's housing was not an issue.

5. On July 22, 2009, the Plaintiff filed a grievance stating the Defendants failed to administer and monitor the Plaintiff's court ordered medication as prescribed by the treating psychiatrist, and because of this failure, the Defendant was denied a fair trial. This grievance was filed after writing District Court Judge Miller regarding the problems. Judge Miller responded, in January 2009, with a Show Cause hearing. The Defendants were again instructed to give the Plaintiff her medication, but continued to defy the court order.

6. On July 23, 2009, Warden Christopher Strickland and Major Durham had the Plaintiff brought to the Major's office. Major Durham stated, the USMS instructed him to tell the Plaintiff the facility no longer had to house the Plaintiff in F-Cellblock, and she could be moved to B-Cellblock. Major Durham further stated the MCSO AND GEO and the USMS agreed the Plaintiff no longer needed the documents and records in her possession. The Defendants agreed the Plaintiff's legal materials could be left in Major Durham's office. If later the Plaintiff needed a document, she could contact the Major to receive access to the legal materials.

7. The Plaintiff explained to the Defendants that she used her legal materials as her legal research leads her to need them. The Plaintiff told the Defendants the USMS and MCSO AND GEO had no legal right to separate the Plaintiff from her legal materials or the right to decide what the Plaintiff needed in those records to defend her case.

8. The Defendants laughed and stated, the USMS said if the Plaintiff wanted to keep the documents and records in the Plaintiff's possession, fine, but from this moment on, the Plaintiff would still be housed in F-Cellblock, in her same cell, but she would be under the same treatment as a disciplinary segregation detainee.

9. Disciplinary segregation detainees have no contact with general population detainees. Most are dangerous to other detainees as well as staff. These detainees are kept in their cells Monday-Friday, 23 hours a day and on Saturday-Sunday, 24 hours a day. They are handcuffed whenever they are removed from their cells. Recreation is given to them for one hour, without contact with other detainees. Law library access is limited and there are no other privileges for them.

10. On July 23, 2009, to the present, it is under these conditions the Plaintiff is currently held by the Defendants. The Plaintiff has no disciplinary action against her and was afforded no due process before this punitive action was taken.

      The Plaintiff has a clear and undisputable right to the relief requested, which will compel a clear nondiscretionary duty upon the Defendants. The Plaintiff does not claim a right to a cell or housing assignment. The Plaintiff raises a claim of denial of due process before punitive action. The Plaintiff is a pre-trial detainee exempt from punishment of any kind.

First, the Plaintiff has a legal right to access to her legal materials and meaningful access to the courts. The Plaintiff has criminal and civil ongoing litigation. Motions in both causes are filed weekly. The Plaintiff has no attorney, therefore she is her sole defense in these causes. It is the constitutional right of all Americans to utilize self-representation should they so choose. The Defendants should not penalize detainees for using this right.

The issue at hand, involves the USMS and GEO unlawfully denying the Plaintiff meaningful access to courts by arbitrarily separating the Plaintiff from her legal materials without a legitimate penological purpose. Second, the Defendants conspired to take punitive action, without due process, against the Plaintiff if she did not voluntarily agree to deny herself access to her legal materials.

The Plaintiff has a legal right to ready access to her legal materials. The Defendants are administrators of a detention facility and a U.S. Marshall. There is no likelihood of the Plaintiff having access to her legal materials when needed. There is no legitimate purpose for the decision against the Plaintiff.

In **Mitchell v. U.S.,** 419 F.Supp.2d 709 (W.D. Pa. 2005), the District Court gives as good an explanation for the Plaintiff's ready access to her legal materials as can be given, quoting **Rich v. Zitnay,** 644 F.2d 41, 43 (1st Cir. 1981):

*It has been said that:*

*[l]egal research often requires browsing through various materials in search of inspiration; tentative theories may have to be abandoned in the course of research in the face of unfamiliar adverse precedent. New theories may occur as a result of a chance discovery of an obscure or forgotten case. Certainly a prisoner, unversed in the law and the methods of legal research, will need more time or more assistance than the trained lawyers in exploring his case. It is unrealistic to expect a prisoner to know in advance exactly what materials he needs to consult.*

*Williams v. Leeke, 584 F.2d 1336, 1339 (4th Cir.1978).*

**Mitchell** goes on to state for itself, "This Court notes that it has consulted volumes of treatises and statutes totaling in the hundreds of pages in the course of addressing this Petition. In light of the availability of these materials, this Court has printed and copied a few hundred pages from various cases when addressing the Petition sub judice." Id. At 714.

The Plaintiff has not even 1% of the ability of the jurist in the Mitchell decision. Therefore, it is understood by courts pro se litigants require meaningful access to law libraries and their legal materials.

Having shown the Court the absurdity of the Defendants unlawful, meddling and interference in the Plaintiff's access to courts, clearly the decision to take punitive action against the Plaintiff should be under suspicion. On one hand, the Defendants seek to deny access to the Plaintiff's legal materials or in the alternative, violate her rights to due process and equal protection under the Eighth and Fourteenth Amendments of the U.S. Constitution.

The Defendants can show no valid, rational connection between their decision and legitimate penological interest put forth to justify it. Pretrial detainees "are not to be subjected to any hardship except those absolutely requisite for the purpose of confinement only". **563 F.2d 741, Miller v. Carson, (C.A.5 (Fla.) 1977).**

The Court, in **Miller,** further held, " In an earlier case we reserved the question whether the Constitution and 42 U.S.C. s 1983 require that pretrial detainees be allowed opportunities for outdoor exercise and recreation. **Smith v. Sullivan, 5 Cir. 1977, 553 F.2d 373, 379.** In the case now before us, we face that question and the question whether the Constitution and Section 1983 mandate such opportunities for convicted prisoners. We hold that both presumably innocent inmates and convicted inmates must be "allowed reasonable recreational facilities". Pretrial detainees are entitled to such facilities because of the due process clause of the fourteenth amendment."

The Defendants actions are in retaliation against the Plaintiff for bringing their gross negligence and deliberate indifference of the Plaintiff's mental health care to the attention of Judge Miller's court.

The present treatment of the Plaintiff is constitutionally unreasonable. The Plaintiff suffers with motor restlessness and is forced to pace to relieve this problem. The medical department and security staff are all aware of this problem. There are cameras in F-Cellblock, which will show the Plaintiff routinely pacing. The unit psychologist noted in the Plaintiff's medical records, the best place to house the Plaintiff was in F-Cellblock , where she could relieve her motor restlessness, without disturbing other detainees, when necessary. For this reason, during the relevant period, the Plaintiff's cell door was never locked.

Today, the Plaintiff is locked in as previously described. To confine the Plaintiff under these conditions for 23 or 24 hours a day in a small cell, with no windows or contact with other detainees is cruel.

Defendants USMS, Oates and the United States denied the Plaintiff meaningful access to courts and a full and fair trial by housing the Plaintiff at JCDF during her five weeklong trial, from March 23, 2009 to April 27, 2009.

For five weeks, the Plaintiff was awakened at 2:00am. The Plaintiff was taken out of her housing cell and placed in holding cell by 2:30am, where she just sat waiting with other detainees until 4:00am, when she was shackled in preparation to be transported to the court. The Plaintiff was not transported back to the facility until 6:15pm. It is an one and a half hour drive from downtown Houston, to Conroe in rush hour traffic. The Plaintiff did not arrive at the facility until 8:00pm or later. The Plaintiff would arrive at her housing cell by 9:00pm and then have to wait until 10:00pm or later for her medication.

Considering the above schedule, along with the denial of adequate mental health care, nutritionally inadequate food and four hours or less of sleep, it could not be said the Plaintiff had meaningful access to court or a fair trial. The Plaintiff requested a transfer to the Federal Detention Center before and during her trial. The Defendants refused to grant the request, while being aware of the harsh circumstances placed upon the Plaintiff during trial. The Defendant made a request for transfer to the trial court and was denied. The Plaintiff invoked her right to self-representation and punitive actions was taken by the Defendants by their deliberate indifference to the Plaintiff's right to a fair trial and meaningful access to courts.

The Federal Detention Center was built with funds appropriated by the United States Congress to build a facility near the federal courts to house pre-trial detainees like the Plaintiff. The refusal of USMS to utilize this building for pre-trial detainees in their custody, especially during a trial, denies meaningful access to courts.

The USMS and GEO, both denied the Plaintiff meaningful access to courts and caused her to be found guilty in a criminal trial, by limiting her access to the facility law library. The facility established a liberty interest/right of access to the law library, by having a law library on the premises. The Plaintiff is one of only three detainees at JCDF who have chosen to utilize their right to self-representation. Oates, instructed the staff at JCDF/GEO to allow only 10 hours of law library access per week. Pre-trial and during trial, Defendants Mosley and Caldwell were the assigned law library officers. Both routinely denied the Plaintiff access to the law library. Both were alleged to be involved in extorting money from male detainees and were later fired. Mosley and Caldwell utilized their positions in the law library to deny the Plaintiff access to the law library, so that they could have more time with the male detainees who were paying them to bring illegal items into the facility. Because of this denial and limitation of access to the law library, the Plaintiff was not prepared for trial. The Plaintiff's case was certified as

complex and she was only given 120 days to prepare. The Plaintiff did not have time to research the laws of evidence and challenge the financial exhibits presented in trial by the Government, which had no support from a Medicare representative to substantiate the legitimacy of the exhibit.

The Plaintiff does not claim she has a right to a law library, but under **Lewis v. Casey**, 116 S.Ct. 2174 (1996), since the facility and Defendants provided a law library, there has to be a legitimate reason for limiting access to the law library by the USMS and GEO, and then denying that access by the law library officers Mosley and Caldwell. The Plaintiff, orally and by motion, requested the criminal court issue an order for 20 hours a week, but the Court refused, stating the Plaintiff did not have a right to a law library.

This is a **Bounds v. Smith**, 97 S.Ct. 1491 (1977), violation. **Bounds** require that inmates be provided with the tools to attack their sentences or in the case of the Plaintiff, prepare for a trial. The "tools" the facility made the choice to offer, is a law library. In **Milton v. Morris**, 767 F.2d 1443, 1446 (9th Cir. 1985), the Court held, an incarcerated criminal defendant who chooses to represent himself has a constitutional right to access to law books or other tools to assist him in preparing a defense. To be clear, the Plaintiff states the law library was adequate to prepare her defense, but she was limited and/or denied access to the law library pre-trial and during trial, effectively denying the Plaintiff meaningful access to court, from November 2008 to May 2009.

The Plaintiff was appointed R. Christopher Goldsmith as counsel to represent her in March 2008. The Plaintiff had two other attorneys from the Federal Public Defender's Office, but for personal reasons of their own, without consulting the Plaintiff, they were released from the case.

Goldsmith's ineffectiveness, in representing the Plaintiff, caused the Plaintiff to go to jury trial, instead of being found not guilty by reason of insanity before a trial judge.

The Plaintiff was transferred to FMC Carswell for an evaluation for competency, in May 2008. During this evaluation, the Plaintiff was diagnosed with Bipolar I Disorder, Post-Traumatic Stress Disorder and Severe Anxiety. The Plaintiff was placed on psychotropic medication and given counseling while at the mental health facility.

In July 2008, the trial court issued an order, to have the Plaintiff evaluated for sanity during the offense. This evaluation was conducted by Dr. Leslie Powers. Dr. Powers found that the Plaintiff was sane during the offense.

The Plaintiff raises ineffective assistance of counsel for several reasons. First, when Dr. Powers was conducting the evaluation on sanity, Goldsmith did not provide any information to Dr. Powers to prove the Plaintiff's insanity during the offense. The Plaintiff did not commit the offenses alleged in the

Indictment and her defense has been if a crime occurred, it was without her knowledge or approval. Goldsmith did not speak with employees or family members to get statements on the Plaintiff's behavior during the relevant period.

Dr. Powers made her evaluation after lengthy conversations with government agents and the review of several boxes of documents. Dr. Powers was also given statements from witnesses, but was not told these people had been charged with crimes and their statements could have been made to receive lesser sentences.

In proffered testimony by Dr. Gregg, Dr. Powers's supervisor, Dr. Gregg stated that a forensic psychologist must gather and receive information from both sides before making a decision on the issue of sanity. Without information from both sides, a fair analysis of sanity could not be made.

Goldsmith did not provide any information to Dr. Powers. Goldsmith conducted no investigation into the Plaintiff's sanity during the relevant period. The Plaintiff's family would have testified they believed the Plaintiff has a severe mental illness and was suffering with the effects of it during the relevant period. Goldsmith did not question any of the Plaintiff's employees to get statements on their remembrances of any behavior, which would have lead them to believe the Plaintiff had a mental illness.

The Plaintiff was diagnosed with several severe mental illnesses, yet Dr. Powers opined the Plaintiff was sane during the relevant period. During this relevant period, the Plaintiff was unaware she had a mental illness and therefore was not under any treatment. Bipolar I Disorder is hereditary and the Plaintiff's mother suffers with this illness. All doctors in proffered testimony agreed it was very likely the Plaintiff has suffered with Bipolar Disorder since her teen years. With all these things being considered, Goldsmith did not ask for a second opinion on the issue of sanity. Goldsmith failed to ask for a independent mental health expert under **Ake v. Oklahoma**, 105 S.Ct. 1087 (1985). The Plaintiff had clearly stated to Goldsmith she wanted to pursue a defense based on her mental illness. This was expressed on the telephone, in conversations recorded while the Plaintiff was at FMC Carswell, to Goldsmith.

Goldsmith failed to challenge the opinion of Dr. Powers by requesting a second evaluation on insanity. The support for a second evaluation is evident—the Plaintiff had been diagnosed with a severe mental illness recognized by all professionals in psychiatry. The diagnosis was supported by two psychiatrist, one psychologists and a mental health team at FMC Carswell. Under the statute for a mental health defense, the Plaintiff had already met the first prong.

Goldsmith did not research Dr. Powers's background. At the time of the evaluation, Dr. Powers had less than three years of working experience, having just recently received her degree. The sanity evaluation was made only by Dr. Powers. In testimony by Doctors Gregg and Kempke, both testified they were not involved in the sanity evaluation and opinion issued by Dr. Powers. Dr. Powers testified she received no data or information of any kind from Goldsmith.

Goldsmith, in November 2008, with trial scheduled, informed the Plaintiff two days before trial that he would be going with the "Key Lay" defense, stating the Plaintiff did not know what was going on.

Because the Plaintiff was indigent, had a severe mental illness and expressed her intention to proceed with a mental health defense, she triggered her right to an independent mental health expert, under **Ake**. Goldsmith's deficient performance deprived the Plaintiff of her defense based on mental illness, basing his decision on the evaluation of one inexperienced forensic psychologist, of whom Goldsmith had not provided with any evidence of the Plaintiff's insanity during the relevant period.

The failure of Goldsmith to effectively pursue an insanity defense, after the Plaintiff had been diagnosed with a severe mental illness, violated the Plaintiff's right to effective assistance of counsel. The Plaintiff was not competent to represent herself, but she had enough presence of mind to know her attorney was deficient and unconcerned with proper representation. Goldsmith failed in his affirmative duty to provide Dr. Powers with information needed to develop an accurate profile of the Plaintiff's mental health. This failure lead to a biased sanity evaluation, by an inexperienced psychologist.

If Goldsmith had given effective assistance, the Plaintiff would have been found not guilty by reason of insanity or just not guilty by the jury based on her lack of specific intent to commit the offenses.

The Plaintiff holds the United States of America liable for her denial of effective assistance of counsel. Goldsmith is in a contract with the USA to represent the Plaintiff and failed to adequately perform this duty. The Plaintiff is suffering unlawful imprisonment due to this failure of counsel.

GEO, Strickland, USMS and Oates have violated the Plaintiff's rights to information in her medical files. These Defendants denied informal requests and grievances requesting a copy of the Plaintiff's medical file. Under the Freedom of Information Act, the Plaintiff has a right to this information. The Plaintiff needed this information to present in her criminal case to prove she was not competent during trial due to inadequate mental health care.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief.

**E. Food**

The food is served cold, it is nutritionally inadequate and it is the same food every day. It is served on trays, which are supposed to keep the food hot or cold. By the time it is taken from the kitchen to the Plaintiff's cell, it is cold. The officers take off the tops covering the food. The tray is taken off the cart, put on the dirty floor so the officer can unlock a door to the cells, and then it is given to the Plaintiff. There are cameras in the Plaintiff's housing area to prove these statements.

Fresh vegetables and fruits are rarely served. No fresh meat or fish is ever served to the Plaintiff. Milk is served once a week. Mainly the menu consists of beans and rice, repeatedly. No diet that does not include milk, fresh vegetables and fruit, daily, can be nutritionally adequate. It should also be stated the portions served are too small to elevate hunger.

Prison officials must ensure "inmates receive the basic necessities of [nutritionally] adequate food ...." **Barney, 143 F.3d at 1310 (citing, Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); see also, Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir.2002).** "A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment," **Thompson, 289 F.3d at 1222,** where the prison officials demonstrated "deliberate indifference," **Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). See also, Helling v. McKinney, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).** The Defendants have been contacted repeatedly, disregarding the Plaintiff and other detainees request for better food.

The failure of the Defendants, Aramark, MCSO AND GEO and Strickland to provide nutritionally adequate meals for almost a year, will have serious long-term effects on the Plaintiff's health. The Defendant has already suffered constipation, skin and nail ailments and other illnesses, due to a lack of nutritional food. The Defendants actions are a breach of professional standards of health care and are actionable under Texas law. The Plaintiff makes a claim of non-care negligence to her health. Aramark is a company with over 170,000 workers and is aware the company has failed to properly feed the Plaintiff and other detainees at JCDF.

The Plaintiff is requesting injunctive relief that the Defendants be ordered to hire a licensed dietician, who will work with the medical department to ensure nutritional meals are served.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief.

## H. Hygiene Items and Facility Sanitation

There is a regular denial of toilet paper by the staff to detainees. Toilet tissue if issued twice a week and if a detainee runs out, they are refused more toilet paper. Defendants MCSO, GEO, Strickland

and Durham have been contacted about the denial of a necessity and have set no policy in place to stop staff from denying the Plaintiff and other detainees' toilet paper.

The Plaintiff is denied the opportunity to adequately comb and brush her hair since arriving at the facility. A hair comb, about 4 inches long, with very small teeth, cannot be used on the Plaintiff's hair, without hair breakage and extreme pain.

The Plaintiff is African-American and her hair was about 12 inches long, and was in good condition, as her medical records will show. The Plaintiff was under the care of a psychiatrist and is prescribed medication that can sometimes lead to hair loss. Therefore, it is noted in the Plaintiff files her was in good condition, with no hair loss, before being transferred to JCDF.

It is widely known by all in correctional facilities, African-Americans, Hispanics, and even some Caucasians require what is call a wide-tooth comb and it is provided at all state and federal prison facilities. Being able to comb one's hair is a recognized constitutional right, the same as being able to brush their teeth.

The Plaintiff also requested that hair relaxer be sold on commissary to make it easier to comb her hair. This product is sold at all state and federal prison facilities.

The Defendants denied the Plaintiff access to a comb, brush and hair relaxer, and because she is denied these hygiene items, she has suffered severe hair loss and physical pain.

The Plaintiff had a constitutional right to proper hygiene while in the custody of MCSO AND GEO, and the Defendants ignored the Plaintiff's repeated requests for a recognized right and need.

The Defendants provided a barbershop for the male inmates, but the females have no access to have a haircut. The Plaintiff suffered sexual discrimination in being denied access to the barbershop by Defendants MCSO AND GEO, Strickland and Durham.

The issues of sanitation are worst. The bedding and assigned sleeping areas are not being sanitized as detainees are released and new detainees come in. Not long after arriving, the Plaintiff contracted ringworm and still has scarring from this disease.

Food slots are left filthy. Officers serve detainees in their cells and food from the trays is left on these food slots for months on end.

At the beginning of the swine flu epidemic, the Defendants would not let Mexican citizens visit, but continued to jeopardize the Plaintiff's health, bringing in illegal aliens, which were caught at the border. All of the staff were given mask to protect themselves. The Plaintiff and other detainees requested mask and were denied this protection.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief.

G. The JCDF Facility is structurally unsafe.

Whenever it rains moderately the building loses power. Sometimes the generator works, sometimes it does not.

The Plaintiff is in a cell with no windows. In July 2009, the facility lost power and stayed without power for two and one-half hours. There were no emergency lights, the PA system did not work. The air conditioning went out. No officers entered any cells to let detainees know what was happening. This was very frightening for the Plaintiff, who had no idea if the building was burning or it had been bombed. In essence, the Plaintiff was left in a terrifying situation—locked in total darkness.

This same situation happened again August 10, 2009. The facility was able to get the lights to stay on, but no air conditioning on a facility with no windows in Texas summer heat. Within two hours, the Plaintiff's cell floor was covered with water and it stayed that way until the next day. On another occasion, half of the building was without lights for several days. All of these building structural deficiency sees have been reported on the news, specifically on Channel 13, after Defendant R. Allen Stanford complained of being in a cell with no air and water all over the floor.

If a hurricane or any other serious weather condition were to occur, the Plaintiff's safety will be in grave danger.

It should be further stated that in the event of the Central American and Mexican gangs rioting the Plaintiff is not safe as a female detainee, from rape or any type of assault. This is a coed facility and the windows can easily be broken by any determined violent male detainee.

This building was built one year ago, and the foundation and walls are full of 14-foot long cracks, which go from the ceiling to the floor. It is not structurally sound and in the case of a hurricane or any other type of severe weather, the Plaintiff is not safe.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief.

H. Recreation

Prisoners are supposed to be afforded recreation. MCSO AND GEO has an open area with one or two handballs. No other exercise equipment has been provided. Because MCSO AND GEO has misappropriated the profits from commissary, the Plaintiff has been denied adequate in cell and out of cell recreation.

MCSO AND GEO routinely makes requests to Christian and other organizations asking them to donate books to prisoners. If this was a state or federal facility, this would be acceptable. GEO have mislead these organizations into donating, when GEO is a for profit corporation, and should not be soliciting Christian organizations for recreation items they have a duty to provide, with profits from commissary.

Currently, the facility library receives two newspapers per day to be shared by 1,000 detainees. Segregation detainees have no access to these newspapers. No magazines are received. All books, mainly old books are donated.

The Plaintiff raises this issue in connection with Violation—B, because it is a fraud and deception on the taxpaying public who are unaware they are sending donations to a private corporation.

This is egregious considering MCSO AND GEO and Strickland, do not have to pay for recreation items. The profits from commissary should be used, as dictated by federal and state laws.

MCSO AND GEO should be ordered to spend the profits appropriately on exercise equipment, books, education classes, magazines and religious literature for all detainees.

The Plaintiff requests injunctive, declaratory, compensatory, nominal and punitive relief. The same federal statutes that regulate how the Bureau of Prisons spends commissary profits, governs these monies at JCDF. The Plaintiff and all other detainees are under the custody of the federal government.

## I. Sexual Discrimination and Pay

The Plaintiff is housed in a cellblock area where female detainees are sometimes placed for disciplinary infractions. From November 2008 to the present, the Plaintiff has had to clean the showers, dayroom and cells of other detainees, without pay. Plaintiff is not requesting pay for cleaning her own cell or cleaning after herself anywhere else in the housing area. As stated earlier in this Complaint, when detainees are released from the cells, no one cleans the cells. Food and other debris humans leave behind will remain in these cells unless the Plaintiff cleans. In addition, when detainees are in segregation for disciplinary infractions, they are not allowed to clean after themselves when they use the showers or dayrooms. For months, the maintain her health and sanity, the Plaintiff had to clean, without pay.

Male detainees are paid for cleaning. It is not much, but the Plaintiff should receive the same pay male detainees received for similar work. Instead, Defendants MCSO AND GEO and Strickland have sexually discriminated against the Plaintiff. In fact, numerous male detainees work, while no females have jobs and the opportunity to earn pay.

"[U]nless some specific kind of outlawed discrimination is shown the state has the right to make
reasonable rules as to whether or not it will pay prisoners and under what circumstances prisoners will
be paid." Wendt v. Lynaugh, 841 F.2d 619, 621 (5th Cir.1988). The Plaintiff states she is being
discriminated against as a female and it is outlawed and a violation of equal protection to work without
pay, when males are paid.

J. The United States of America represented by the U.S. Attorney's Office
violated the Plaintiff's due process rights and obtained a default judgment
against property belonging to the Plaintiff in the amount of $1,846,668.98.
The judgment is void under Rule 60(b)(4).


This matter was originally heard in USA v. $670,706.55, Civil Action
No. H-05-718 and the judgment was affirmed on appeal. However, this judgment
is void due to lack of subject matter jurisdiction and violation of due process
of law.

The district court granted a default judgment in the matter in
on October 4, 2005, without the knowledge of the Plaintiff, in violation of
Fed. R. Civ. P. 55(b), 3-day notice requirement before a default judgment can
be granted. Failure to notify a plaintiff of application for judgment by de-
fault is void and without due process where defendant is not afforded benefit
of the 3-day rule. See, Bass v. Hoagland, 172 F.2d 205 (5th Cir. 1949)(hold-
ing a default judgment is void where Rule 55 was violated.); Also see, New
York Life Ins. v. Brown, 84 F.3d 137 (5th Cir. 1996)(Citing Bass, and stating
the defendant was denied due process of law and the judgment against him is
void, for failure to provide notice impending grant of summary judgment.);
Savoretti v. Rodriguez-Jiminez, 252 F.2d 290 (5th Cir. 1958)(holding failure to
comply with 3-day notice requirement renders default judgment void.)

In the appeal brief filed by the Government, it is acknowledged that the Plaintiff did appear as required by the rule for notice. The money came out of accounts owned by the Plaintiff and as the Government acknowledged on page 13 of their brief, notice is required when a party appears and the Plaintiff did file a document of waiver. Even with the waiver, the notice was required. The rule does not allow a party waive the requirements for a default judgment.

In addition, the district court lacked subject matter jurisdiction to grant a forfeiture under 18 U.S.C. § 981, where the Government failed to meet the tracing requirements under the statute as interpreted by U.S. v. Banco Cafetero, 797 F.2d 1154 (2nd Cir. 1986).

In Banco Cafetero, the court borrowed the "lowest intermediate balance" rule governing commingling of funds held in trust to establish the so-called "drugs-in, last out" rule under which tainted money is presumed to be the last money withdrawn from the account. Id at 1159. In other words, "...if $100 from a drug sale is deposited into an active account, the proceeds in the account are 'traceable " to the extent of $100 as long as the account balance never falls below that amount." U.S. v. All Funds; 832 F.Supp. 542, 551 (E.D.N.Y. 1993).

In U.S. v. $814,254.76, 51 F.3d 207, 208 (9th Cir. 1995), the court held §981 could not support forfeiture of money from a bank account where account had been depleted between time of unlawful deposits and time of seizure. Under the rule, because the Plaintiff's account "zeroed out" (one bank account was actually overdrawn), between the date of the offense and the date of the Original Complaint was filed, none of the defendant funds was subject to forfeiture under §981.

For example, Bank America Account XXXX-944 had a balance of $8,925.84 on August 13, 2004. The Government forfeited $314,720.10 from this account. under Banco Cafetero and under case law precedent, only $8,925.84 was available

for forfeiture. The district court lacked subject matter jurisdiction to grant a judgment of forfeiture for Account 9944 and all other accounts.

This case involved Medicare fraud, where the Government alleged that numerous fraudulent claims were filed. However, the Government never alleged all claims filed were fraudulent. In fact, during the criminal proceeding, testimony was presented where more than \$300,000 was spent on supplies and equipment. Under §981(a)(2)(B), cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term 'proceeds' means the amount of moneyacquired through the illegal transaction resulting in the forfeiture, less the direct costs incurred in providing the goods or services.

### PRAYER FOR RELIEF

The Plaintiff requests all relief she is due under the United States Constitution, federal and state laws and any applicable legal theories.

### STATEMENT OF VERIFICATION OF THE COMPLAINT

The Plaintiff verifies that all statements made in this Complaint are true and correct to the best of her knowledge, under the penalty of perjury, and should be construed as an affidavit to the facts by the Plaintiff.

Respectfully Submitted,

5/31/12

Rhonda Fleming, Plaintiff, pro se

24 / Page

CERTIFICATE OF SERVICE

A copy of the same has been sent by certified mail to the attorneys

of the Defendants, on May 31, 2012:

United States Attorney
Civil Litigation Section
801 Cherry Street
Fort Worth, TX 76102
For all federal employees


Tim Flocos
2402 Rio Grande
Austin, TX 78704
For the GEO Group, Inc and all of its employees/contractors

Rhonda Fleming
May 31, 2012

2

A CERTIFIED COPY

**096 259612 12**   ATTEST: 6.25.12

STATE OF TEXAS

TARRANT COURNTY DISTRICT COURT

THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS

BY: Jama Tanner

DEPUTY

RHONDA FLEMING

v.

DR. LESLIE POWERS

APPLICATION TO PROCEED IN
FORMA PAUPERIS, SUPPORTING
DOCUMENTATION AND ORDER

CASE NUMBER:

---

I, __Rhonda Fleming_____, declare that I am the *(check appropriate box)*

[✗] petitioner/plaintiff          [ ] movant (filing 28 U.S.C. 2255 motion)

[ ] respondent/defendant          [ ] _____
                                                    *other*

in the above-entitled proceeding; that, in support of my request to proceed without being required to prepay fees, cost or give security therefor, I state that because of my poverty, I am unable to pay the costs of said proceeding or give security therefor; that I believe I am entitled to relief. The nature of my action, defense, or other proceeding or the issues I intend to present on appeal are briefly stated as follows:

In further support of this application, I answer the following questions.

1. Are you presently employed?                              Yes [ ]    No [✗]
   a. If the answer is "yes," state the amount of your salary or wages per month, and give the name and address of your employer. (list both gross and net salary)

   b. If the answer is "no," state the date of last employment and the amount of the salary and wages per month which you received.

   I have been incarcerated 4½ years.

2. Have you received within the past twelve months any money from any of the following sources?
   a. Business, profession or other form of self-employment    Yes [ ]    No [✗]
   b. Rent payments, interest or dividends?                     Yes [ ]    No [✗]
   c. Pensions, annuities or life insurance payments?           Yes [ ]    No [✗]
   d. Gifts or inheritances?                                    Yes [ ]    No [✗]
   e. Any other sources?                                        Yes [✗]    No [ ]

If the answer to any of the above is "yes," describe each source of money and state the amount received from each during the past twelve months.

*Family friends have sent an average of $100⁰⁰ a month*

3. Do you own any cash, or do you have money in checking or savings accounts?

Yes ☑   No ☐   (Include any funds in prison accounts.)

If the answer is "yes," state the total value of the items owned.

*$80⁰⁰*

4. Do you own or have any interest in any real estate, stocks, bonds, notes, automobiles or other valuable property (excluding ordinary household furnishings and clothing)?

Yes ☐   No ☑

If the answer is "yes," describe the property and state its approximate value.

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

*N/A*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___5-30-2012___                    _____

(Date)                                    Signature of Applicant

3

A CERTIFIED COPY
ATTEST: 6·25·12
THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS

BY: _____
DEPUTY
LAURA TANNER

THOMAS A. WILDER
CLERK OF DISTRICT COURTS
401 W BELKNAP        (817)884-1240
FORT WORTH TX 76196-0402

RHONDA FLEMING                                    June 04, 2012
P.O. BOX 27137
20446-009
FORT WORTH TX 76127-

Cause Number: 096-259612-12

RHONDA FLEMING
VS
DR. LESLIE POWERS

Any Court Cost Paid    $0.00   Unbillable to Party    $0.00
Remaining Balance Due in the amount of   **$166.60**
**DUE AND PAYABLE UPON RECEIPT A COPY WILL NEED TO BE PROVIDED FOR EACH
SERVICE COPY.  COPIES ARE NOT COVERED UNDER THE PAUPERS AFFIDAVIT**

Thank you,

TARA RABY
Deputy District Clerk

FINES AND COURT COSTS MAY BE PAID IN CASH, MONEY ORDER, CASHIER'S CHECK, OR CREDIT CARD
PAYMENTS MUST BE PAYABLE TO: **TARRANT COUNTY DISTRICT CLERK**
3RD FLOOR JUSTICE CENTER - CIVIL SECTION 8:00-5:00 MONDAY-FRIDAY
**401 W BELKNAP, FORT WORTH TX 76196-0402**        (817)884-1240
* AUTOMATED PHONE SYSTEM: 1-866-549-1010.  ONLINE: **WWW.CERTIFIEDPAYMENTS.NET**
  YOU WILL BE PROMPTED FOR A BUREAU CODE. THE CODE FOR CIVIL    IS 2631095.
  YOU WILL ALSO BE PROMPTED FOR YOUR CASE NUMBER(S).
* NOTE: PAYMENTS MADE BY CREDIT CARD MAY TAKE UP TO 2 BUSINESS DAYS TO POST TO YOUR CASE.

For additional information please visit us online at http://www.tarrantcounty.com/eDistrictClerk/site/default.asp
Click on the Collections/Payments tab.
The convenience fee for Internet/Phone (IVR) transactions for all credit cards (including VISA, MasterCard,
Discover and American Express will be a $4.25 flat rate.  The convenience fee for all MasterCard, Discover
and American Express walk-up transactions will be 3% of the transaction amount with a $1.00 minimum.
VISA will not be accepted for walk-up payments.

TO INSURE PROPER CREDIT, YOU MUST INCLUDE CASE NUMBER(S) ON YOUR PAYMENT

4

096  259612 12

FILED
TARRANT COUNTY
5  5  12
2012 JUN -4  PM 1:16

THOMAS A. WILDER
DISTRICT CLERK

Dear Clerk:

to perform service of
this complaint, I need the
lawyers representing the federal
government & The GEO Group, Inc,
to provide me with their employees
addresses. In addition, I am
requesting to proceed in forma
pauperis because I cannot
afford the filing fee or the cost
of certified mail to all of the
defendants. Please bring this to
the attention of the assigned judge.

Respectfully,

Rhonda Fleming

CC: file

096 259612 12

5-31-2012

Dear Clerk:
    please file the enclosed
civil complaint. I am enclosing
a SASE. Please file stamp
this letter & return it to me
in the enclosed SASE.

Case title:
  — Fleming v. Powers

Rhonda Fleming

FILED
TARRANT COUNTY
2012 JUN -4 PM 1: 16
THOMAS A. WILDER
DISTRICT CLERK

5

A CERTIFIED COPY



TEST: 6·25·12

THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY TEXAS

BY: *Laura Tanner*

DEPUTY
LAURA TANNER

**R. H. WALLACE, JR.**
DISTRICT JUDGE
96TH JUDICIAL DISTRICT OF TEXAS
TIM CURRY CRIMINAL JUSTICE CENTER, 7TH FLOOR
FORT WORTH, TEXAS 76196-0223
PHONE  817-884-1450

REGINALD BUTLER
OFFICIAL COURT REPORTER
817-884-1451

June 6, 2012

MARCIA HUCKABY
COURT COORDINATOR
817-884-2685

Ms. Rhonda Fleming
P.O. Box 27137
20446-009
Fort Worth, Texas 76127

      RE:  Cause No. 96-259612-12; Rhonda Fleming v. Dr. Leslie Powers

Dear Ms. Fleming:

      Enclosed is a copy of the Local Rules of Court, Tarrant County, Texas. I reference you to Rule 1.02: Parties Proceeding Pro Se on page 2 of the Local Rules. This applies should you not be represented by an attorney.

      The Local Rules and the Tarrant County Jury Calendar can be found on the web at www.tarrantcounty.com. When the official website appears, on the left side of page, click on Jury Services, when the next page comes up, on the left side of page, click on Jury Calendar.

      Should you have any questions, please contact me.

      Very truly yours,

      *Marcia Huckaby*

      Marcia Huckaby

encl(1)

6

STATE OF TEXAS

TARRANT COUNTY DISTRICT COURT



RHONDA FLEMING

V.                                    NO.  096-259612-12

A CERTIFIED COPY

DR. LESLIE POWERS, et al.                ATTEST: 6.25.12

THOMAS A. WILDER
DISTRICT CLERK
TARRANT COUNTY, TEXAS

MOTION FOR DISCOVERY
TO PERFORM SERVICE OF PROCESS  BY:_____

DEPUTY
LAURA TANNER

TO THE HONORABLE COURT:

COMES NOW, Rhonda Fleming, Plaintiff, pro se, filing the
above titled document, with the following in support:

The present case was filed June 4, 2012.  This case
involves the United States government employees and the
employees of a corporation, The GEO Group, Inc., a govern-
ment contractor.

On the same day of the filing of the Complaint, the
Plaintiff served the Defendant's attorneys with a copy of
the Complaint, by certified mail.  Copies of the U.S. Postal
Service Certified Mail Receipt are attached.

Employees, such as the U.S. Marshal Service and the
lead defendant, Dr. Powers, a government forensic psycho-
logist, are represented by the United States Attorney's
Office.  Therefore, these Defendants have been properly

-1-

served.

The GEO Group, Inc. is represented by attorney, Tim Flocus.  The Plaintiff had a family friend contact The GEO Group, Inc. and Mr. Flocus' office information was given.

However, to efficiently serve the Complaint on the other Defendants, the Plaintiff requires taht the U.S. Attorney's Office and Mr. Flocus for GEO Group, provide the current or last known address of the Defendants named in the Complaint, that are under contract or employment with the U.S. govern- ment or The GEO Group, Inc.

Or in the alternative, counsel for the Defendants can waive further service of process since they are in possession of the Complaint.

Respectfully Submitted,

Rhonda Fleming, Plaintiff
June 7, 2012

CERTIFICATE OF SERVICE

A copy of the same has been mailed to those listed be- low, by U.S. Mail, prepaid, on the same day:

U.S. Attorney's Office
Civil Litigation Section
801 Cherry Street
Fort Worth, TX 76102

Mr. Tim Flocus, Attorney
2402 Rio Grande
Austin, TX 78704

Rhonda Fleming, Plaintiff
June 7, 2012

-2-





June 7, 2012



RE:  Fleming v. Powers
     No. 096-259612-12

Dear Clerk:

Enclosed is a Motion requesting discovery so that I can
perform service to the remainder of the Defendants.  Please
file stamp this letter and return it in the enclosed SASE.

Thank you,

Rhonda Fleming

P.S.  Please let me know the name of the judge this case
has been assigned to.



FORT WORTH TX 760

08 JUN 2012 PM 5 L

<<20446-009<>
Tarrant County Dist Clerk
Xxx-- County Court House
401 W. Belknap
FORT Worth, TX 76196
United States

76196

Name _Rhonda Fleming_
Reg. No. _20446-009_
Federal Medical Center, Carswell
P.O. Box 27137
Ft. Worth, TX 76127

7

# Civil Docket

## Discovery: 2

## 096-259612-12

Cause of Action: INJURY OR DAMAGE, OTHER INJURY OR DAMAGE

| Date Filed | NAMES OF PARTIES | ATTORNEYS |
|---|---|---|
| 06/04/2012 | RHONDA FLEMING | FLEMING, RHONDA |
| | | PO BOX 27137 |
| | | 20446-009 |
| | | <<< PRO SE >>> |
| | | FORT WORTH, TX 76127 |
| | | Ph - |
| | vs. | |
| | DR. LESLIE POWERS | PLTF |

Filing Fee $ Paid

| Date of Orders | ORDERS OF COURT | Was Steno Used? |
|---|---|---|

096-259612-12